UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------- X

MARIO LUBIN,                                   :
                                               :
                              Plaintiff,        :    **Case No.  26 Civ. 4152**
          - against -                           :
                                               :    **COMPLAINT**
CWD OF HICKSVILLE, INC. d/b/a CURE WATER        :
DAMAGE,                                         :
                                               :
                              Defendant.        :
------------------------------------------------- X

Plaintiff Mario Lubin, by and through his counsel, Kessler Matura P.C., brings this action

against CWD of Hicksville, Inc. d/b/a Cure Water Damage ("CWD" or "Defendant"), and alleges

as follows:

## NATURE OF ACTION

1.      This action arises from Defendant's misclassification of Plaintiff Mario Lubin as

an independent contractor and its failure to pay him overtime wages and all earned wages in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York

Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.* Defendant also

violated the NYLL's wage statement requirements, NYLL § 195(3), and the New York State

Construction Industry Fair Play Act ("Fair Play Act"), Labor Law §§ 861 *et seq.*

2.      Throughout his more than 23-year tenure with CWD, Defendant classified Lubin

as an independent contractor and paid him solely on commission. CWD misclassified him. It

controlled every material aspect of his work—assigning jobs by text message, setting his on-call

schedule, providing all equipment, limiting his pricing authority, and requiring exclusivity. Lubin

was economically dependent on CWD and had no independent business beyond his work for

CWD.

3.    Defendant required Lubin to form a corporate entity as a condition of working for CWD and structured the relationship through an independent contractor agreement. Neither the corporate form nor the agreement reflects the economic reality of the relationship.

4.    As a consequence of this misclassification, Defendant failed to pay Lubin overtime premiums for hours worked in excess of 40 per week, failed to pay him all earned wages, and failed to furnish accurate wage statements reflecting hours worked, rates of pay, and overtime.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under 29 U.S.C. § 216(b).

6.    The Court has supplemental jurisdiction over Plaintiff's NYLL claims under 28 U.S.C. § 1367.

7.    Venue lies in this district under 28 U.S.C. § 1391(b) because Defendant conducts business in Nassau County, Plaintiff performed work in Nassau County, and a substantial part of the events giving rise to the claims occurred in Nassau County.

## PARTIES

*Plaintiff*

8.    Lubin is a resident of Queens County, New York.

9.    At all times relevant to this Complaint, Lubin was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), NYLL §§190(2), 651(5), and the New York Construction Industry Fair Play Act, NYLL § 861(3).

10.    Lubin worked for CWD from approximately September 15, 2002 through August 15, 2025, when CWD terminated his employment.

*Defendant*

11. Defendant CWD of Hicksville, Inc. d/b/a Cure Water Damage is a New York corporation.

12. CWD's principal place of business is at 95 Jerusalem Avenue, Hicksville, New York 11801.

13. At all times relevant, Defendant was a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d); NYLL §§ 190(3) and 651(6); and the Fair Play Act, NYLL § 861(4).

14. Defendant provides its customers with a wide array of water-removal and water-damage-restoration services. This includes demolition, reconstruction, alteration, rehabilitation, repair, and renovation services following water damages to homes and other structures.

15. Defendant is in the construction business, as defined by the Fair Play Act, NYLL § 861(1).

16. Defendant was a "contractor," as defined by the Fair Play Act, NYLL § 861(2).

17. Upon information and belief, at all times relevant, the gross annual revenues of CWD exceeded $500,000, and CWD engaged in commerce within the meaning of the FLSA.

18. Upon information and belief, CWD performed water damage restoration services using equipment, materials, and supplies that moved in interstate commerce, and it dispatched Lubin to job sites across Long Island and the New York City boroughs, which are located across state and county lines and served by interstate carriers and suppliers.

19. Upon information and belief, CWD sourced equipment and supplies from outside New York, including through out-of-state vendors. Some of CWD's work was performed pursuant to insurance claims handled by out-of-state insurers, who directed the scope and manner of restoration work on individual jobs.

## FACTUAL ALLEGATIONS

***Lubin's Employment with CWD***

20.    Lubin worked for CWD as a Water Damage Technician from approximately September 15, 2002 through August 15, 2025—more than 23 years.

21.    In this role, he performed water damage restoration, emergency water removal, sewage removal, and dehumidification services at customer locations throughout Long Island and the boroughs of New York City.

22.    CWD classified Lubin as an independent contractor.

23.    CWD paid Lubin solely on commission, issuing IRS Form 1099s.

24.    In 2002, CWD required Lubin to form a corporate entity, ML Water Damage Inc., as a condition of obtaining work from CWD. CWD would not engage Lubin otherwise.

25.    The Independent Contractor Agreement between CWD and ML Water Damage Inc., dated July 17, 2015, names ML Water Damage Inc. as the "Contractor."

26.    Lubin signed that agreement as a representative of ML Water Damage Inc., not in his individual capacity.

***CWD's Control Over Lubin's Work***

27.    Lubin performed water damage restoration for CWD for over 23 years. Water damage restoration is CWD's core business.

28.    Lubin was required to accept every assignment CWD sent him.

29.    CWD set Lubin's schedule.

30.    CWD provided the equipment Lubin used on every job.

31.    CWD required Lubin to complete CWD's job paperwork and follow CWD's instructions for each assignment.

32.     CWD constrained Lubin's pricing authority. Lubin could not set prices without CWD's approval.

33.     CWD prohibited Lubin from working for any other company.

34.     Lubin did not market his services, maintain his own client base, hire workers, purchase materials, or otherwise operate as an independent enterprise.

35.     CWD required Lubin to obtain general liability and workers' compensation insurance naming CWD as an additional insured. That requirement was a condition of performing work, not an independent business decision.

36.     CWD did not require Lubin to hold any professional license or certification. Any skills Lubin developed were acquired through his work for CWD and used exclusively on jobs CWD assigned.

37.     Lubin worked for CWD continuously and without a fixed end date for more than 23 years — his entire career in water damage restoration.

### Lubin's Hours and Defendant's Failure to Pay Overtime

38.     Lubin regularly worked more than 40 hours per week.

39.     CWD required him to be on call seven days per week from 7:00 a.m. to 6:00 p.m.

40.     His work included on-call time, travel to job sites, actual job performance, completion of required CWD job paperwork, and collection of payments on CWD's behalf.

41.     The Independent Contractor Agreement itself required Lubin to be available 24 hours a day, seven days a week.

42.     CWD assigned jobs at all hours of the day, including early mornings, afternoons, and evenings.

43. CWD assigned each technician one scheduled day off per week on a rotating basis. Lubin worked six days per week as a matter of routine.

44. CWD paid Lubin solely on commission. His annual compensation from CWD ranged from mid-five figures to six figures in the years preceding his termination, reflecting a consistent, high-volume workload throughout the year.

45. CWD monitored Lubin's progress to job sites in real time, directing him to hurry to assignments and tracking his location while en route.

46. CWD assigned multiple jobs to Lubin on the same day.

47. Despite Lubin regularly working more than 40 hours per week, CWD paid him only straight commission with no overtime premium.

48. CWD has operated in the water damage restoration and construction industry for decades. CWD retained counsel and structured its relationship with Lubin through an independent contractor agreement and a corporate form requirement. CWD knew or should have known that its classification of Lubin as an independent contractor violated the FLSA and NYLL.

***Defendant's Failure to Pay All Earned Wages***

49. On June 27, 2024, CWD threatened to withhold Lubin's pay via text message, stating: "call me or I stop payment on your check."

50. On January 4, 2025, CWD excluded Lubin from a commission he had earned. CWD sent Lubin a photograph of a client's payment for a completed job and wrote: "lost a nice one," after cutting him out of the commission.

51. Shortly before his termination, Lubin completed a job with another technician and was entitled to a 15% commission totaling approximately $1,016. The other technician received his share in September 2025. Lubin was never paid.

52.     On August 15, 2025, CWD terminated Lubin's employment and instructed him to return company equipment, sending him home without pay.

***Defendant's Failure to Provide Accurate Wage Statements***

53.     Although Lubin received weekly paystubs showing commission percentages and amounts for individual jobs, those statements did not reflect hours worked, rates of pay, or overtime. Because CWD never recorded or reported his hours, Lubin had no means to verify whether his compensation was accurate, to identify underpayments, or to calculate the overtime wages owed to him. The absence of accurate wage statements concealed from Lubin the full extent of CWD's wage violations throughout his employment.

54.     CWD failed to make, keep, and preserve records of the hours Lubin worked.

## FIRST CAUSE OF ACTION
### FLSA — Failure to Pay Overtime Wages

55.     Plaintiff incorporates all preceding allegations.

56.     The FLSA requires employers to pay non-exempt employees one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.

57.     At all relevant times, Defendant was an "employer" and employed Lubin within the meaning of that term. CWD's annual gross volume of sales or business exceeded $500,000, and CWD engaged in interstate commerce.

58.     Defendant misclassified Lubin as an independent contractor. CWD directed and controlled every material aspect of Lubin's work, including assigning jobs, setting his schedule, requiring him to accept every assignment, providing all equipment, and constraining his pricing authority. Lubin performed water damage restoration and emergency water removal, CWD's core business, at customer locations CWD assigned. Lubin had no independently established business;

he did not market his services, maintain his own client base, or operate as an independent enterprise.

59. Lubin regularly worked more than 40 hours per week. Defendant failed to pay him overtime wages for those hours.

60. Defendant's violations were willful. CWD is a sophisticated construction-industry employer that retained counsel and structured the working relationship specifically to avoid employer obligations. CWD knew or showed reckless disregard for whether its classification of Lubin and its pay practices violated the FLSA. The Independent Contractor Agreement CWD drafted required Lubin's availability 24 hours a day, seven days a week — confirming CWD's awareness that Lubin's working time was not limited to 40 hours per week.

61. As a result of Defendant's violations, Lubin is entitled to unpaid overtime wages, liquidated damages equal to unpaid wages, and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### NYLL — Failure to Pay Overtime Wages

62. Plaintiff incorporates all preceding allegations.

63. The NYLL requires employers to pay non-exempt employees one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. NYLL § 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2.

64. At all relevant times, Defendant was an "employer" within the meaning of N.Y. Lab. Law §§ 190, 651, and employed Lubin within the meaning of those sections.

65. Defendant misclassified Lubin as an independent contractor. CWD directed and controlled every material aspect of Lubin's work, including assigning jobs, setting his schedule, requiring him to accept every assignment, providing all equipment, and constraining his pricing authority. Lubin performed water damage restoration and emergency water removal, CWD's core

8

business, at locations CWD assigned. He had no independently established business; he did not market his services, maintain his own client base, or operate as an independent enterprise. The Fair Play Act presumes that a worker performing construction services is an employee unless the contractor establishes that the worker is free from its direction and control, performs work outside its usual course of business or principal place of business, and is independently established in the same trade. NYLL §§ 861 *et seq.* CWD cannot satisfy any prong.

66.    Lubin regularly worked more than 40 hours per week. Defendant failed to pay him overtime wages for those hours.

67.    Defendant's violations were willful. CWD is a sophisticated construction-industry employer that retained counsel and structured the working relationship specifically to avoid employer obligations. CWD knew or showed reckless disregard for whether its classification of Lubin and its pay practices violated the NYLL. The Independent Contractor Agreement CWD drafted required Lubin's availability 24 hours a day, seven days a week — confirming CWD's awareness that Lubin's working time was not limited to 40 hours per week.

68.    As a result of Defendant's violations, Lubin is entitled to unpaid overtime wages, liquidated damages equal to unpaid wages, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### NYLL — Failure to Pay All Earned Wages

69.    Plaintiff incorporates all preceding allegations.

70.    The NYLL requires employers to pay all earned wages, including earnings determined on a commission basis. NYLL § 191(1)(c); 12 N.Y.C.R.R. § 142-2.1. NYLL § 193 prohibits any deduction from wages and provides no exception for commission-based workers. An

9

employee who prevails on an earned wages claim is entitled to recover unpaid wages, liquidated damages, and attorneys' fees. NYLL § 198(1-a).

71.    Defendant misclassified Lubin as an independent contractor. CWD directed and controlled every material aspect of Lubin's work, including assigning jobs, setting his schedule, requiring him to accept every assignment, providing all equipment, and constraining his pricing authority. Lubin performed water damage restoration and emergency water removal, CWD's core business, at customer locations CWD assigned. Lubin had no independently established business; he did not market his services, maintain his own client base, or operate as an independent enterprise.

72.    Lubin earned commissions for work he performed for CWD. Defendant failed to pay Lubin all earned commissions, including: (a) the commission withheld on or about January 4, 2025; and (b) approximately $1,016 in commissions for work completed during his final weeks at CWD, for which he was never paid.

73.    Defendant's violations were willful. CWD's June 27, 2024 threat to stop payment on Lubin's check and its deliberate exclusion of Lubin from the January 4, 2025 commission were intentional acts, not oversight.

74.    As a result of Defendant's violations, Lubin is entitled to all unpaid wages, liquidated damages equal to unpaid wages, and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### NYLL — Failure to Provide Accurate Wage Statements

75.    Plaintiff incorporates all preceding allegations.

76.     The NYLL requires employers to provide employees, with each wage payment, a statement listing hours worked, rates of pay, gross wages, and other required information, as required by § 195(3).

77.     CWD's weekly paystubs showed only commission percentages and amounts for individual jobs. They did not reflect hours worked, regular or overtime rates of pay, overtime hours, or the other required information. Defendant failed to provide Lubin with accurate wage statements throughout his employment.

78.     Defendant's violations were willful. CWD issued commission-only paystubs throughout Lubin's 23-year tenure without ever recording hours worked, rates of pay, or overtime. CWD knew what its paystubs contained and chose not to change them.

79.     As a result, Lubin is entitled to statutory damages of $250 per workday for each day the violation occurred, not to exceed $5,000, plus reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mario Lubin requests judgment against Defendant as follows:

(a)     An award of all unpaid overtime wages;

(b)     An award of all unpaid earned wages, including withheld commissions;

(c)     Liquidated damages equal to unpaid wages under the FLSA and the NYLL;

(d)     Statutory damages up to $5,000 for failure to provide accurate wage statements;

(e)     Pre-judgment and post-judgment interest;

(f)     Reasonable attorneys' fees and costs; and

(g)     A declaratory judgment that Defendant misclassified Lubin as an independent contractor and failed to pay him overtime wages in violation of the FLSA and NYLL; and

(h)     Such other and further relief as the Court deems just and proper.

11

Dated: July 10, 2026
Melville, New York

Respectfully submitted,

*/s/ Jocelyn Small*

**KESSLER MATURA P.C.**
Garrett Kaske
Jocelyn Small
534 Broadhollow Road, Suite 275
Melville, NY 11747
(631) 499-9100
gkaske@kesslermatura.com
jsmall@kesslermatura.com